Dixon *v.* State.

Crim. 3896

Opinion delivered October 22, 1934.

*P. L. Smith,* for appellant.

*Hal L. Norwood,* Attorney General, and *John H. Caldwell,* Assistant, for appellee.

SMITH, J.   This appeal is from a judgment sentencing appellant to a term of seven years in the State penitentiary upon conviction under an indictment charging him with having shot and killed Le Roy Scott.   The testimony on the part of the State was to the effect that appellant overtook Scott, who was escorting one Alberta. Furlow to an entertainment, and shot Scott without provocation after the latter had run some distance along the road in which all three of the parties—all of whom were colored—were walking.   Appellant admitted having fired the fatal shot, but testified that he fired after Scott had assaulted him with rocks, which were thrown at him by Scott, one of which struck his hand and bruised it badly. According to the testimony of Alberta Furlow, appellant spoke angrily to deceased when they were overtaken in the road by appellant, and deceased said, "Go on, Jesse, I am not bothering you," and appellant said, "You is the one I wants to see."   Following this remark appellant presented a gun, which Alberta had not previously seen, as it was after darkness had fallen.   Deceased ran and was pursued up a hill by appellant, and after they had run far enough to be out of sight, but not out of hearing she heard deceased say, "I will run no further; shoot, damn you!"   And the fatal shot was immediately fired.   When Alberta reached the scene of the shooting, deceased was dying, and he died without speaking to her.

There was testimony corroborating and other testimony contradicting the testimony given by Alberta, but it is unimportant to set it out, as the question of her veracity was one for the jury, and her testimony above recited was sufficient to sustain, not only the verdict returned, but would have supported a conviction for the highest degree of homicide.

Alberta was a married woman, but had not lived with her husband for several years.   She was asked if she had not, after leaving her husband, lived with deceased as his wife, both in this State and in the State of Oklahoma.   She denied that she had.   Rass Richerson, her brother-in-law, was called as a witness and was asked whether Alberta and deceased had cohabited as man and wife, but an objection was sustained to the question,

whereupon appellant's attorney stated that, if permitted to answer, the witness would state that Alberta and deceased had lived together, posing as husband and wife.

The record reflects that the objection to the question was sustained upon the theory that the relationship inquired about was a collateral matter, which was concluded by the denial of Alberta. We do not concur in that view. The testimony should have been admitted as bearing upon the bias of Alberta in weighing her testimony. In the case of *McCain* v. *State*, 129 Ark. 75, 195 S. W. 363, a witness for the State in a homicide case was asked if he had not stated, after the killing, that, if the defendant had not shot the deceased, he (the witness) would have done so. The witness denied making the statement, and another witness was called to prove that he did make the statement, but the trial court declined to admit that testimony. In holding this ruling to be error calling for the reversal of the judgment, it was there said: "In defense of the action of the court, the rule is invoked that, where a witness is cross-examined on a matter collateral to the issue, his answer can not subsequently be contradicted by the party asking the question. But this rule is not applicable here, for the bias of a witness is not a collateral matter, and, if the witness gives a false answer to a question which would reveal the bias, the falsity of the answer may be shown by other testimony." (Citing cases.)

Appellant was asked upon his cross-examination if he had not shot at another colored man named Boss Sheridan. It was not contended that he had been convicted for so doing. *Carr* v. *State*, 43 Ark. 99. Inasmuch as this incident occurred more than twenty years before the trial, we think it was too remote to have any probative value, and should have been excluded for that reason. Section 1123 of Chapter on "Criminal Law," 16 C. J., page 581; *Taylor* v. *State*, (Tex.) 179 S. W. 113; *Beck* v. *State*, 141 Ark. 111, 216 S. W. 306.

He was also asked if he had not shot at Oliver Hankins, a white man. He denied that he had shot at Hankins, but admitted that he and Hankins had a difficulty a few years before the trial, but he was not permitted to

offer the explanation that he was only fined for a simple assault, as Hankins admitted at the trial that he (Hankins) was at fault in that difficulty. Trial courts have a wide discretion in the admission of testimony of this character in determining whether proof of moral delinquencies is or is not too remote to have probative value. We think the admission of the testimony in relation to the difficulty with Hankins was not an abuse of this discretion; but we are also of the opinion that, after permitting the State to prove there had been such a difficulty in the cross-examination of appellant, he should have been permitted to make the explanation which he offered to make.

For the errors indicated the judgment will be reversed, and the cause remanded for a new trial.