## I. N. Roach et al. v. Charles Malotte et al.

### Decided April 14, 1900.

**1. Contested Election—Answer of Contestee—Notice.**

In an action to contest a local option election, the failure of the contestee to deliver to the contestant within ten days after receiving notice of the contest, a reply in writing stating the grounds of defense, is not, per se, cause for striking out contestee's answer at the trial, as the statute is in this respect merely directory, and the failure should not have such effect unless it would delay the trial. Rev. Stats., art. 1799.

**2. Same—Voter Correcting Ballot After It Is Cast.**

After a ballot has been duly placed in the ballot box, the officers holding the election have not the right, at the voter's request, to open the box and take out the ballot to enable him to correct and change it.

Appeal from Parker. Tried below before Hon. J. W. Patterson.

*Flanary & Wilson,* for appellants.

*A. H. Culwell,* for appellees.

HUNTER, Associate Justice.—This suit was filed July 19, 1899, to contest the local option election held in justice precinct No. 2 of

Parker County, known as the Springtown precinct, on July 1, 1899, to determine whether or not the sale of intoxicating liquors should be prohibited within said precinct. I. N. Roach, county judge, and A. B. Flanary, county attorney, were made contestees.

On the 11th of July, 1899, the commissioners court, with said Roach as chairman or presiding officer, declared the result of the election to be 273 votes for prohibition and 273 votes against prohibition, and prohibition being then in force in the precinct, said commissioners court entered an order continuing it in force. The facts upon which the contest was based were that Wiley Downs, who was a qualified voter in the precinct, handed to the judges of the election a ballot against prohibition, which was deposited by the judges in the ballot box, and that afterwards, within two minutes and before leaving the polls, he bethought himself and discovered that he had voted against prohibition when he intended to vote for it, and making the statement to the judges that he had made a mistake, requested them to open the ballot box and take out his ballot and allow him to vote another ballot expressive of his sentiments on the issue, all of which was accordingly done, and the first ballot was taken out by the judges, handed to him, and he then and there destroyed it, and prepared another ballot and caused it to be placed in the ballot box. The first ballot was against prohibition, and was not counted. The second ballot was for prohibition, and was counted, and this made the vote a tie in the precinct. The first ballot was voted by an innocent mistake, and was corrected in good faith, and there was no actual fraud intended or perpetrated by anybody connected with the transaction.

The contestees did not deliver to the contestants any answer to the contest or file any in this cause until November 7, 1899, on which day they filed an answer in this cause with the clerk of the District Court, in which was an unverified plea in abatement, a general demurrer and general denial, and a special statement contesting the votes of Charles Lindsey, Martin Lynch, and Ona Sullivan, upon the ground that they had voted against prohibition and were not legal or qualified voters,— the first because he was a blind pauper then being supported by the county, the second because he was then a soldier in the United States army, and the last named because he was a minor under the age of twenty-one years,—and prayed that the ballot box containing these ballots be opened and the matter inquired into and investigated, and that said votes be stricken out and not counted.

A motion was made on November 8th to strike out this statement and answer because it had not been filed or delivered to contestant or his attorneys within ten days after notice of the contest had been delivered to contestees, and this motion was sustained and the statement and answer of contestees were stricken out, to which they excepted, and this action is the basis of one of contestees' assignments of error here. The District Court upon the evidence as above related

also struck out and refused to count the ballot of Wiley Downs for prohibition, and this is also made the ground of serious complaint here.

Our local option law is found under title 69 of our Revised Statutes of 1895, and is contained in articles 3384 to 3399, inclusive. There is but one article in said title which relates to a contest of an election held thereunder, and that is article 3397, which provides in substance that within thirty days after the result of the election has been declared any qualified voter of the justice precinct, etc., may contest the same in any court of competent jurisdiction, in such manner as has been or may be hereafter prescribed. No mode of contest is prescribed in that title, and we therefore conclude that it was the intention of the Legislature that such contests should be made and conducted in the manner pointed out in title 36, being our statute on elections. In chapter 7 of that title, which relates to the contesting of elections, we find article 1797, which provides: "Contested elections for other purposes than the election of officers shall be tried by the district court in the county where the election was held, or either of them if there is more than one such court." Article 1804t provides: "If the contest be for the validity of an election held for any other purpose than the election of an officer or officers in any county or part of a county or precinct of a county, or in any incorporated city, town, or village, any resident of such county, precinct, city, town, or village, or any number of such residents, may contest such election in the district court of such county in the same manner and under the same rules, as far as applicable, as are prescribed in this chapter for contesting the validity of an election for a county office."

The validity of an election for a county office under this chapter is contested by the person intending to make the contest, within thirty days after the return day of the election, giving to the person holding the certificate of election, his agent or attorney, a notice in writing of the contest, and a statement of the ground on which such contestant relies to sustain such contest. Art. 1798. Article 1799 then provides: "The person holding such certificate shall within ten days after receiving such notice and statement deliver or cause to be delivered to said contestant, his agent or attorney, a reply thereto in writing."

It has been held by our Supreme Court that the notice and statement required to be served by the contestant on the contestee constitute the predicate upon which the power of the court is set in motion, and unless served within the time required by the statute, the court had no jurisdiction to hear and determine the contest. Wright v. Fawcet, 42 Texas, 203; Rogers v. Johns, 42 Texas, 339; Lindsey v. Luckett, 20 Texas, 516.

When the decisions in the cases above cited were rendered, however, there was no provision in our Constitution conferring upon the district courts general jurisdiction in contested elections, as is contained in our present Constitution. Const., art. 5, sec. 8. Only the

statute conferred jurisdiction, and it was held that its provisions regulating the remedy must be strictly followed. The statute is substantially the same now as it was when the decision in Wright v. Fawcet was rendered, and contains specific provisions as to how and when the contestant shall begin the contest. It shall be by a notice and statement of the grounds of contest, which shall be served on the contestee, his agent or attorney, within thirty days after the official result is declared, and the answer thereto is required to be delivered to the contestant within ten days after the contestee is served with the notice and statement of the contest. These papers are to be filed with the clerk of the district court, who is required to docket the same as other causes, and the case shall precedence over all other causes as to trial. Yet no provision is made for trying the cause out of term time. The "statement" and the "reply" may be amended in the same manner and under the same rules, terms, and provisions that the petition and answer may be amended in civil causes, but the statute requires the contestee to serve a copy of the reply on contestant, his agent or attorney, within ten days after he is served with the notice and statement of contest. We have reached the conclusion, however, that this provision relating to the service and time of service of the "reply" by contestee on contestant is directory merely, because we are of opinion that when the contestant by complying with the statute has called into exercise the jurisdiction of the court in the particular contest, the case must be considered as a suit duly pending in the court, an answer to which may be filed on default day or at any time within the sound discretion of the court, as in other civil causes.

The record does not disclose when contestants' notice and statement were served on contestees. Indeed, the answer contains an unverified plea to the jurisdiction of the court because no notice or statement was delivered to the contestees within the thirty days, as required by the statute. The amended petition of contestants upon which the case was tried contained no allegation that such notice or statement had been served on contestees. The petition was filed within the thirty days, but it does not appear from the record that any citation and copy of the petition had been served on contestees within the thirty days. The contestees filed an answer, but it was nearly four months after the petition was filed.

The unverified plea to the jurisdiction was sufficient to raise the issue of contestants' right as citizens to maintain the contest, and although the judgment does not in terms pass upon the question, we must presume that the issue was tried and the facts were sufficient to sustain the court's jurisdiction, especially as the question is not raised by contestees in this court, either on the plea or the general demurrer, on either of which, if urged here by proper assignments, we should perhaps be compelled to reverse and dismiss the contest; but we have no doubt this issue was tried and determined below against them, and for that reason they do not raise the question here.

This brings us to the question raised in the first assignment of error; that is, whether the court erred in striking out the contestees' answer. We think that if the motion had been made upon the ground that it would delay the trial of the contest, the action of the court might have been right, but this objection was not presented. The only objection presented was that the answer was not delivered to contestants within ten days. We think contestees should comply with the statute in serving a copy of the reply within ten days, and if this is not done the answer should be stricken out, if it will cause any delay in the trial. The contestee would be in no condition to ask any favor of the court where he has not complied with the statute, though even then the court should exercise a sound discretion, so as to do even justice to the parties as speedily as possible. It has been said that continuances and postponements are rarely granted by the courts, because every day's delay renders the matter in controversy of less value.

We are also of opinion that the District Court did not err in rejecting the ballot of Wiley Downs. The learned counsel for appellees makes in his short but able brief this proposition: "Mistakes made by election officers may sometimes be corrected, but mistakes of the voter can not be corrected. When a ballot has once been deposited in the box, the legal status of the voter becomes permanently fixed, and can not be changed." That is, he has voted, and he can not change his vote or vote more than once. We think this proposition contains the law, and voters must not make mistakes. It will not do to allow ballot boxes to be opened by anybody. Their contents should be held as sacred from the touch of man, except for the purposes provided by law, as was the ark of the covenant; for, as the one contained the will of God, the other contains the voice and will of the people, which in our republican government constitute the palladium of our liberties.

Appellees' proposition above is well sustained, we think, by the following authorities: Harbrough v. Cicott, 33 Mich., 241; Anderson v. Winfree (Ky.), 4 S. W. Rep., 354; Cowan v. Prowse (Ky.), 19 S. W. Rep., 411.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*