The Honorable B.G. Hendrix Speaker of the House 2215 So. 40th Street Fort Smith, AR 72903
Dear Mr. Speaker:
This is in response to your request for an opinion concerning what action the Legislature should take in addressing the situation of a member-elect of the House of Representatives who has pleaded guilty to federal misdemeanor charges and who will begin serving time in a federal penitentiary some time in February, in the middle of the upcoming legislative session. It is our understanding that the charges involve the misuse of Farmer's Home Administration Loan monies.
We should note initially that it is not our function to direct the General Assembly's action in this matter, but rather we will set out the relevant provisions of law, in an attempt to aid the Legislature in following the proper procedures in this instance.
It should be noted in this regard that the Arkansas Constitution, Art. 5, 9 provides as follows:
 No person hereafter convicted of embezzlement of public money, bribery, forgery or other infamous crime shall be eligible to the General Assembly or capable of holding any office or trust or profit in this State.
Another provision of our Constitution, Art. 5, 11, provides that:
 Each house shall appoint its own officers, and shall be sole judge of the qualifications, returns and elections of its own members. A majority of all the members elected to each house shall constitute a quorum to do business, but a smaller number may adjourn from day to day, and compel the attendance of absent members in such manner and under such penalties as each house shall provide. [Emphasis added.]
The two provisions set out above were read together in State ex rel., Evans v. Wheatley, 197 Ark. 997, 125 S.W.2d 101 (1939), so as to make the affected house of the General Assembly the sole judge of a member's eligibility under Art. 5, 9. That is, the Senate or the House, as the case may be, is the sole judge of a member's eligibility to take office if there is a question of conviction of embezzlement, bribery, forgery or other infamous crime. The court stated in Evans that:
 Appellant insists that Senator Wheatley is ineligible to a seat in the senate under [Art. 5, 9] for the reason that he has been convicted of an infamous crime. We hold that the senate is the sole judge of his eligibility under this section. It may be that the senate in passing upon his eligibility or qualifications found that the crime with which he was charged was not infamous. But be that as it may, the action of the senate in that regard and in seating him is final, and the trial court in this case was without jurisdiction to determine that matter.
We cannot agree with appellant that the word `qualifications,' as used in 11, Art. V of the Constitution, should be given the restricted definition and interpretation which he insists should be placed upon it. We think it includes and embraces the word `eligibility'.
197 Ark. at 1001.
It is thus apparent that the House of Representatives is the sole judge of whether the member-elect is eligible to a seat in the House. If the House finds that the member-elect has been convicted of embezzlement of public money, bribery, forgery or other infamous crime, it should refuse to allow him, under Art. 5, 9, to take his seat. If not, it may allow him to be seated, and the House's decision on the matter is final.
In making its decision, the House may wish to be guided by the legal definitions of "embezzlement" and "infamous crime[s]". The term "embezzlement" is defined by Black's Law Dictionary, (5th ed. 1979) as follows:
 To `embezzle' means willfully to take, or convert to one's own use, another's money or property, of which the wrongdoer acquired possession lawfully, by reason of some office of employment or position of trust. The elements of `embezzlement' are that there must be relationship such as that of employment or agency between the owner of the money and the defendant, the money alleged to have been embezzled must have come into the possession of defendant by virtue of that relationship and there must be an intentional and fraudulent appropriation or conversion of the property other by one who has lawful possession of the property and whose fraudulent conversion has been made punishable by statute.
Black's, supra at 468. See also Stard v. State, 204 Ark. 247,161 S.W.2d 756 (1942) and Arnett v. State, 188 Ark. 1106, 70 S.W.2d 38
(1932).
The phrase "infamous crime" is defined in the same text as:
 A crime which entails infamy upon one who has committed it. The term `infamous' — i.e., without fame or good report — was applied at common law to certain crimes, upon the conviction of which a person became incompetent to testify as a witness, upon the theory that a person would not commit so heinous a crime unless he was so depraved as to be unworthy of credit. These crimes are treason, felony, and the crimen falsi.
. . . . It is not the character of the crime but the nature of the punishment which renders the crime `infamous.' Whether an offense is infamous depends on the punishment which may be imposed therefor, not on the punishment which was imposed.
Black's supra at 335.
The House may wish to review the specific charges to which the member-elect has pled guilty to determine whether they constitute "embezzlement" or other "infamous crime[s]". It is our understanding that each of the five misdemeanor counts to which the member-elect pled guilty involve a charge of converting federal monies to his own use. This fact, and all other pertinent facts surrounding the charges, may weigh in the House's final determination.
If the House finds that the provisions of Art 5, 9 are inapplicable, and it decides to seat the member-elect, it appears that it still has the authority to expel the member under the provisions of Arkansas Constitution Art. 5, 12, which provides that:
 Each house shall have the power . . . with the concurrence of two-thirds, [to] expel a member . . . . A member expelled for corruption shall not thereafter be eligible to either house.
This expulsion provision would only be applicable, however, if the House finds the member-elect eligible to be seated, as only "members" may be expelled.
If the House elects to deny the member-elect his seat under the provisions of Art. 5, 9 and 11, or if it decides to seat him and then expel him according to Art. 5, 12, a vacancy will be created. Our Constitution provides at Art. 5, 6 that "[t]he Governor shall issue writs of election to fill such vacancies as shall occur in either house of the General Assembly." This section is extrapolated at A.C.A. 10-2-119 (b) which provides:
 In all cases of vacancies happening or being declared during any session of the General Assembly, by death, expulsion, or otherwise, the presiding officer of the house in which the vacancy shall happen shall immediately notify the Governor, who shall immediately issue a writ of election to fill the vacancy.
It appears that the writ of election is to set the date of the election, (A.C.A. 7-5-103), which may not be earlier than thirty days after the issuance of the writ. The notice provisions of A.C.A. 7-5-202 are also applicable.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] The term "public money" was held to include federal monies in Irby v. Day, 182 Ark. 595 (1930).
[2] Neither the Constitution, nor any statute or case we have found, prescribes the exact procedure for this determination of eligibility. Assuming there are no express House rules on the subject, the House may adopt a procedure it determines to be in conformity with the Constitution and its general rules and procedures.
[3] We will not undertake a discussion of the definition of the term "embezzlement" as it is defined by the criminal laws of the State of Arkansas, both because federal charges are at issue in this instance, and a more general common law definition of the term is likely sufficient for the House's purposes.
[4] This term is defined by Black's, supra as referring to "crimes in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense which involves some element of deceitfulness, untruthfulness, or falsification bearing on witness' propensity to testify truthfully." Black's supra at 335.